## ELLIOTT, JONES & CO., Inc., v. WAURIKA OIL ASS'N et al. (No. 2152.)

(Court of Civil Appeals of Texas. Amarillo. May 23, 1923. Rehearing Denied June 27, 1923.)

1. Sales ⊙⇒32—Letters held offer and acceptance creating contract to buy oil.

A letter from operator of an oil pipe line, the reply thereto by owner of a royalty interest in an oil producing well and the execution of a division order *held* an offer and an acceptance, creating a valid contract for the sale of oil at $1.75 a barrel.

2. Sales ⊙⇒442(12)—Generally purchase price with interest, held measure of damages for breach of warranty of title.

Generally the measure of damages for breach of warranty of title is the purchase price, with interest from the date of payment.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by the Waurika Oil Association and others against Elliott, Jones & Co., Inc., and others. Judgment for plaintiffs, and defendant Elliott, Jones & Co., Inc., appeals. Affirmed.

Clamp, Searcy & Groesbeeck and F. H. Booth, all of San Antonio, for appellant.

John P. Marrs, Bullington, Boone, Humphrey & Hoffman, and Weeks, Morrow & Francis, all of Wichita Falls, for appellees.

BOYCE, J. E. E. Elsea was the owner of a one-eighth royalty interest in the oil produced from a well operated by the Waurika Oil Association. The lessee was, under the terms of the lease contract, required to deliver such oil to the credit of Elsea in the pipe line connected with the lease. From September 5, 1919, to November 1, 1919, the oil runs from the lease were delivered to a pipe line operated by Elliott, Jones & Co., and Elsea's one-eighth interest therein, for which he was not paid, amounted to 9,076¾ barrels. Elsea brought this suit against Elliott, Jones & Co., alleging that the said defendant was obligated by contract to pay him for said oil at the rate of $1.75 per barrel. Plaintiff, in the alternative, asked for judgment against Elliott, Jones & Co., the Waurika Oil Association, and other defendants for conversion of said oil. The facts to sustain the plaintiff's recovery on the agreement alleged are as follows:

Elliott, Jones & Co., prior to July 28, 1919, had been taking the oil runs from the lease referred to and paying plaintiff therefor at the rate of $2.25 per barrel. On July 28th it notified Elsea by wire that from such date its "purchase price on oil run from leases" in which he was interested would be

$1.75 per barrel. Elsea went to see an agent of Elliott, Jones & Co. at Wichita Falls, who referred the matter to its San Antonio office, and on August 15, 1919, Elliott, Jones & Co. wrote to Elsea the letter which furnishes the basis of Elsea's claim of contract. The letter is lengthy. Most of it is devoted to an argument to sustain Elliott, Jones & Co.'s. position that $1.75 per barrel was under the circumstances a fair price for the oil. We quote only the following passages therefrom as being directly pertinent to this discussion:

"You realize that when we offer you $1.75 for your oil that it does not mean an indefinite offer. When the market tightens, and we can secure more for the oil we sell, we will gladly and voluntarily offer you more. * * * We are inclosing division, orders covering leases that you own a royalty on and from which we are running some oil. We would appreciate your signing these division orders at price named until further notice, either by you or us. We will then send you check in full for your oil run to date. If you will not do this, we are ready to deliver your oil back to you immediately, and will ask what disposition you wish made of same, as we do not have the storage room to carry it for you. * * * Your immediate reply is requested, and if you don't wish to entertain this offer, kindly let us know what disposition to make of this oil, as we cannot store it for you any longer."

To this letter Elsea replied by letter of August 18th as follows:

"I am this date returning signed division order mailed me by the Waurika Oil Company of Fort Worth, Texas. In reply to your letter of August 15th, will say that I will sign division orders at present, with the understanding that you people are treating me right in this matter, as I am not on the ground and do not know just what is just right at present, but will be down later and will investigate matters. I do know that the listed price is $2.25, and I told your people at Wichita Falls that, if you people were taking the advantage of me while things were congested, you would be remembered when things did get normal. I am going to have quite a good deal of oil to run on 88. and the ones that treat me right now are the ones that will be remembered after a while. I also told your people that I did not want any pipe line on my place that could not run my oil and treat me right. So you people know what is the market for my oil, and if you will you can be of quite a help to me in running my oil at the price, and I can be of help to you in furnishing you oil, and please let me hear from you along this line."

The division order referred to was dated July 26, 1919, and was signed by the Waurika Oil Association and by Elsea. It is addressed to Elliott, Jones & Co., and is in part as follows:

"The undersigned certify and guarantee that they are the legal owners of Waurika Oil Association Company No. 1, Wells No. 1, on the E. E. Elsea farm, located on Block 88 ——— in-

cluding the royalty, interest and until further notice you will give credit for oil received from said well as per directions below.

| Credit to. | Division of Interest. | Post Office Address. |
|---|---|---|
| Waurika Oil Association Co. No. 1. | ⅞ | 601 Main St. Ft. Worth, Texas. |
| E. E. Elsea. | ⅛ | Marshall, Mo. |

"* * * Elliott, Jones & Co., Inc., is hereby authorized for a period of further notice to receive oil from said wells for purchase from said parties severally in the proportion named, subject to the following conditions: * * * Said oil shall be paid for to the owners or their assigns in proportion to their respective interests shown above at ———, the posted price paid by Elliott, Jones & Co., Inc., for the same kind and quality of oil on the same day that said oil, purchased in pursuance of this division order, is delivered as aforesaid."

The record does not show that Elliott, Jones & Co. had any posted price during the period of time mentioned. The reasonable cash market value of oil per barrel in this field during September and October, 1919, was $1.25 per barrel, according to the finding of the jury. No notice of any changes in contract was given, either by Elsea or by Elliott, Jones & Co., to each other after the exchange of these letters and prior to November 1, 1919.

It was Elliott, Jones & Co.'s contention that under the facts stated it was bound only to pay plaintiff its "posted price" for his oil, and that it paid plaintiff for all oil belonging to him and delivered to it prior to September 5th; that about September 5, 1919, the Waurika Oil Association sold to T. A. Edmonds 100,000 barrels of oil, to be delivered from Waurika Oil Association well No. 1, at $1 per barrel, and that Elsea agreed that his royalty interest should be delivered under said contract, and that Edmonds, who was made a party defendant, should pay Elsea therefor, and had offered to do so; that Edmonds sold said 100,000 barrels of oil to Elliott, Jones & Co. at $1.25 per barrel, and that all oil received by it from said well, after September 5, 1919, was delivered to it under the contract with Edmonds; that, if plaintiff was not a party to the contract with Edmonds, he knew the facts and did not notify Elliott, Jones & Co. of his claim to any part of the oil that Edmonds was delivering to it, but, without notice or objection, permitted it to settle with Edmonds for all oil delivered, and is estopped from claiming pay for such oil. The contract between Edmonds and the Waurika Oil Association just referred to was dated September 6, 1919, and provided for the sale by said association to Edmonds of 100,000 barrels of oil at $1 per barrel, and that Edmonds should "receive and take all the oil from well No. 1 on the nine-acre lease in the northwest corner of block 88, * * * until said 100,000 barrels is received, provided that, in event well No. 1 should fall

below 3,000 barrels per day, then oil to the amount of 3,000 barrels per day may be delivered from No. 1 and from any other wells on said lease, if first party [the oil association] desires to deliver from other wells, until this contract is fulfilled." The contract between Edmonds and Elliott, Jones & Co. is also dated September 6th, and provides for sale by Edmonds to Elliott, Jones & Co. of 100,000 barrels of oil, "to be delivered by seller to buyer from the well known as the Waurika Oil Association No. 1." This contract contains the further provisions:

"Seller has represented to buyer that said 100,000 barrels has been purchased by said seller from the Waurika Oil Association on its lease in block 88, and that settlement for this oil shall be made direct to T. A. Edmonds, the seller, who agrees to protect and hold harmless the buyer from any claims made by any one against the buyer for the payment of this oil. Said seller agrees to furnish buyer at once with letter from properly authorized officer of the Waurika Oil Association No. 1, approving this contract and agreeing that all settlements are to be made direct with T. A. Edmonds covering the 100,000 barrels named herein. It is understood that buyer is to receive preference on all oil produced on this lease up to stipulated amount herein, and seller is to receive preference by buyer of all oil runs by buyer to its storage tanks and loading racks."

Edmonds delivered to Elliott, Jones & Co. in pursuance of this contract, something over 70,000 barrels of oil, including therein Elsea's one-eighth interest, which amounted to the 9,076¾ barrels in controversy in this suit. Edmonds knew that Elsea owned a one-eighth interest in the oil that was to be run from said well. His partner testified that they thought they had an oral contract with Elsea to buy this one-eighth interest. The officers of the Waurika Oil Association testified that they did not sell, and were not authorized to sell, Elsea's interest in the oil runs. Edmonds paid the Waurika Oil Association for seven-eighths of the oil from the well and delivered to Elliott, Jones & Co., under the circumstances stated, and tendered payment for one-eighth thereof, at $1 per barrel, to Elsea, which was refused. Elliott, Jones & Co. paid Edmonds for all the oil delivered to it at $1.25 per barrel, except a balance of $4,955.65.

Based on the facts above stated, Elliott, Jones & Co. sought recovery over against Edmonds and the Waurika Oil Association for any amount that the plaintiff might recover against it. The jury, in response to special issues, found that Elliott, Jones & Co. contracted with Elsea "to purchase one-eighth of the oil to be run in its pipe line connected with the Waurika at the price of $1.75 per barrel until further notice by either party"; that no notice of the discontinuance of said contract was given prior to November 1st; that between September 7th and November

1st Elliott, Jones & Co., acting under said contract, ran into its pipe line 9,076¾ barrels of oil belonging to Elsea; that Elsea did not agree to sell his one-eighth interest in the oil produced from the Waurika lease to Edmonds; that Elsea did not know of the Edmonds contract and that all the oil from the Waurika lease was being delivered to Elliott, Jones & Co. under said contract; that Elliott, Jones & Co., when it made the contract with Edmonds, knew that Elsea owned one-eighth of the oil produced from the Waurika well, and did not rely on Edmond's guarantee of title to Elsea's one-eighth of the oil. Judgment was rendered in favor of plaintiff against Elliott, Jones & Co., for $17,601.30, and in favor of Elliott, Jones & Co. against Edmonds on his warranty contract for the sum of $11,345.95, less a credit of $4,955.65, balance which it would owe Edmonds on purchase price of oil delivered to it.

[1] We think the evidence is sufficient to sustain the finding in plaintiff's favor on the contract. The letter written by Elliott, Jones & Co., Elsea's reply thereto, and the division order signed by him at the same time should be construed together as forming the contract. Elliott, Jones & Co.'s letter was an unequivocal offer to pay $1.75 per barrel for the oil already received by it and that received in the future until further notice. It called for reply and the signing of division order to complete the contract. While Elsea's reply is not as unequivocal as it might be, we think it is an acceptance of the offer. The division order evidently consisted of a printed form, with blanks to be filled in to meet the particular situation. The letters were dealing specifically with the question of the price to be paid for the oil. The language of the letters was that of the parties themselves, and in case of discrepancy between that language and that of the printed form might properly be given controlling effect. Page on Contracts, § 2043; Simkins on Contracts, § 9502.

We find no error in the manner of submitting the issue of contract. The ultimate fact issue was thereby presented for determination of the jury. The charge submitted in connection therewith did not, in our opinion, exclude from the jury the consideration of the division order in arriving at the meaning of the contract. We also think there was no error in the refusal to submit special issue No. 1, requested by appellant and referred to in the fifth proposition. This issue requested the jury to find whether the two letters passing between Elliott, Jones & Co. and Elsea constituted a contract between the parties, independent of the division order. As we have already said, we think the division order became a part of the contract, and the submission of the issue requested would have been error.

The ninth proposition complains of error in the refusal of the trial court to submit issues as to whether plaintiff authorized Roy

Baker, field superintendent of the Waurika Oil Association, to run plaintiff's royalty oil with the Waurika oil at the same price. The issue, as requested, is of an evidentiary fact. The ultimate issue of fact was sufficiently submitted, we think, by the sixth issue of the charge, which required the jury to find whether Elsea or his authorized agent contracted to sell Edmonds plaintiff's royalty interest in the oil at $1 per barrel.

Appellant, under the eighth and twelfth propositions, contends that the Waurika Oil Association warranted the ownership in Edmonds of the oil sold and delivered by Edmonds to the appellant; that there were no issuable facts for submission to the jury in such connection, but the court should have rendered judgment in appellant's favor against the Waurika Oil Association, as well as against Edmonds. The contract between the Waurika Oil Association and Edmonds, construed in the light of the circumstances surrounding the parties at the time, does not necessarily mean that the Waurika Oil Association was selling Elsea's oil. It was selling 100,000 barrels of oil, to be delivered out of the Waurika well and others. Since the parties knew that the Waurika Association owned only seven-eighths of the oil run, it is a reasonable conclusion that the parties intended that only oil owned by the association was to be delivered under the contract. Edmonds and his partner did not claim that the contract between the Waurika Oil Association and Edmonds covered Elsea's interest. Elliott, Jones & Co. also knew that the Waurika Oil Company and Elsea owned the oil that was produced from the well in the proportion stated, and had been prior to this time purchasing these interests under separate contracts with each owner. The letter written by the Waurika Oil Association to Elliott, Jones & Co. did not necessarily mean more than that Edmonds had the right to sell the Waurika Company's interest in the oil. The facts at least were sufficient to make an issue of fact, and this conclusion results in the overruling of these propositions.

[2] Appellant makes two complaints against the judgment as to Edmonds, who has not appealed. These are: (1) That appellant is entitled to recover on Edmonds' warranty the amount that it is compelled to pay the plaintiff; (2) that, as Edmonds did not plead a set-off, it was error for the court to allow him credit for the balance due him on the oil delivered. The general rule of measure of damages for breach of warranty of title is that the buyer is entitled to recover the purchase price paid, with interest thereon from the time of payment. Anding v. Perkins, 29 Tex. 353, 354; Sutherland on Damages (4th Ed.) 669. The purchase price in this instance

was $1.25 per barrel, and appellant's damages were estimated on this basis. The damages sustained by Elliott, Jones & Co., by reason of the fact that it was under contract with Elsea and was compelled to pay Elsea $1.75 per barrel for this oil, would be special damages, and, if recoverable at all in a case of this kind, could in our opinion only be recoverable on pleading and proof of notice of the facts by Edmonds. We think the court applied the proper rule of damages. Elliott, Jones & Co. had not paid $4,955.65 of the purchase price of the oil, title to which failed. It is not liable, therefore, because there has been a failure of consideration of the contract. So we think this amount was properly taken into consideration, not as a credit or offset, but in ascertaining the extent of plaintiff's damage.

We find no reversible error presented by the propositions, and the judgment is affirmed.

## On Motion for Rehearing.

The appellant argues in the motion for rehearing that, since Elsea did not plead the division order as a part of the contract, then he cannot recover under the conclusion stated in our opinion that the division order, together with the two letters that passed between Elsea and Elliott, Jones & Co., should be construed together as forming the contract between the parties, because the evidence does not conform to the pleading. It is true that Elsea did not plead the division order as a part of the contract sued on by him. He alleged that Elliott, Jones & Co., as shown by the letters, copies of which were attached to his petition as exhibits, agreed to purchase his oil and pay therefor the sum of $1.75 per barrel. He relied on the letters, and still relies on them, as supporting these allegations. On the other hand, the defendant was relying on the division order as superseding any agreement expressed in the letters. Our conclusion as stated, was that the division order did not supersede the agreement stated in the letters, but became a part of the contract and should be construed in connection with the letters. But as plaintiff was not relying on the division order, and does not rely on it, as an embodiment of the specific agreement on which he was suing, his failure to plead it as a part of the contract ought not to preclude him from recovery, when it has been determined that there was nothing in the division order that changed the particular part of the agreement evidenced by the letters on which recovery was sought.

Other matters mentioned in the motion for rehearing have been sufficiently considered in the original opinion.

The motion for rehearing is overruled.